1   NAME: Jose A. Prado

2   ADDRESS: PO Box 914

3         San Jose, CA 95108

4   PHONE: (707) 628-4251

5   ATTORNEY: Pro Se

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**
                              SAN JOSE DIVISION

10  Jose A. Prado                          )
                                           )
11                         Plaintiff,      )
                                           )
12       vs.                               )      CASE NO. CV12-03945
                                           )
13  Federal Express Corporation            )
                                           )      **EMPLOYMENT DISCRIMINATION**
14                         Defendant(s).   )              **COMPLAINT**
                                           )
15  _____)

16  1.   Plaintiff resides at:

17       Address 891 North 14th Street

18       City, State & Zip Code San Jose CA 95112

19       Phone (707) 628-4251

20  2.   Defendant is located at:

21       Address 942 South Shady Grove Road

22       City, State & Zip Code Memphis, TN 38120

23  3.   This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employ-

24  ment discrimination.  Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000e-5.

25  Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

26  4.   The acts complained of in this suit concern:

27       a. __ Failure to employ me.

28       b. X  Termination of my employment.

Form-Intake 2 (Rev. 4/05)                    - 1 -

1    c. _X_ Failure to promote me.

2    d. _X_ Other acts as specified below.

3    Discrimination _____

4    Retaliation _____

5    Harassment _____

6    Breach of Contract _____

7    Negligence _____

8    Failure to re-employ after leave _____

9    5.    Defendant's conduct is discriminatory with respect to the following:

10       a. __ My race or color.

11       b. __ My religion.

12       c. __ My sex.

13       d. _X_ My national origin.

14       e. _X_ Other as specified below.

15       Disability _____

16   6.    The basic facts surrounding my claim of discrimination are:

17   Please See Attached _____

18   Jose A. Prado, Plaintiff  (Mr. Prado)          Family and Medical Leave Act  (FMLA) _____

19   Federal Express Corporation, Defendant (FedEx) _____

20   Ramona McMaster, Defendant (Ms. McMaster) _____

21   Human Capital Management Program (HCMP) _____

22   Corporate Human Capital Management Committee (CHCMC) _____

23   Guaranteed Fair Treatment Procedure (GFTP) _____

24   Guaranteed Fair Treatment/Equal Employment Opportunity Procedure (GFTP/EEO) _____

25   7.    The alleged discrimination occurred on or about _2001 - 2010_____ .

26                                           (DATE)

27   8.    I filed charges with the Federal Equal Employment Opportunity Commission (or the

28   California Department of Fair Employment and Housing) regarding defendant's alleged

Form-Intake 2 (Rev. 4/05)                    - 2 -

1  discriminatory conduct on or about <u>1/8/09 & 5/20/10</u>          .

2                                         (DATE)

3  9.      The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter

4  (copy attached), which was received by me on or about <u>May 1, 2012</u>          .

5                                         (DATE)

6  10.     Plaintiff hereby demands a jury for all claims for which a jury is permitted:

7          Yes <u>X</u>      No _____

8  11.     WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,

9  including injunctive orders, damages, costs, and attorney fees.

10

11  DATED: <u>7-26-2012</u>                 _____

12                                         SIGNATURE OF PLAINTIFF

13

14  (PLEASE NOTE: NOTARIZATION          Jose A. Prado

15  IS NOT REQUIRED.)                   _____

16                                         PLAINTIFF'S NAME

                                          (Printed or Typed)

17

18

19

20

21

22

23

24

25

26

27

28

Form-Intake 2 (Rev. 4/05)                  - 3 -

1    The basic facts surrounding Mr. Prado's claim of discrimination are:

2

3    On or about September 1997 Mr. Prado began working at FedEx through a temp. agency.  On or about

4    December 1997 Mr. Prado was officially hired, as a Part-Time Handler, by Samuel Chin, FedEx Operational Manager.

5    On or about May 2000 Mr. Prado suffered a right knee injury; while working at FedEx.  Samuel Chin had Mr.

6    Prado sign a statement taking responsibility for the injury.  FedEx alleged that Mr. Prado could have avoided injury if

7    he would have been walking; instead of running.  Mr. Prado's injury may have been unavoidable.  Mr. Prado was sent

8    to get a truck ASAP and the pavement was uneven and in disrepair.

9    On or about November 2000 Mr. Prado was out on a Medical Leave of Absence for right knee surgery.

10   On or about January 2001 Mr. Prado suffered his first stroke; while recovering from his right knee surgery.  Mr.

11   Prado's first stroke made a significant impact.  Mr. Prado was in a coma for about a month in the Intensive Care Unit

12   of San Jose Hospital.  Mr. Prado's physicians gave him a slim chance at survival.  In total, Mr. Prado was hospitalized

13   for approximately three months.  Mr. Prado's coworkers and managers frequently visited him.  Ramona McMaster,

14   FedEx HCMP Manager, was kept informed of Mr. Prado's condition.  Mr. Prado's first Medical Leave of Absence was

15   for approximately a year.

16   On or about November 2001 Mr. Prado returned to work for FedEx at the SJC Station.  Mr. Prado reported to his

17   manager, Samuel Chin.  Mr. Chin had Mr. Prado doing such light duty tasks as:  scanning documents.  On or about

18   December 2001 another FedEx Manager, David Correira, pulled Mr. Prado off of doing light duty and sent Mr. Prado

19   to download freight containers.  The practice, pattern of FedEx Management assigning Mr. Prado to do light duty tasks

20   only to later revert back to assigning Mr. Prado to do non light duty tasks began here and continued to the day Mr.

21   Prado suffered his second stroke on June 18, 2009.  For approximately 8 years Mr. Prado performed the essential

22   functions of his position - with or without reasonable accommodation. FedEx Management recognized Mr. Prado's job

23   performance on 2 separate occasions.  The first Bravo Zulu Award was given on or about June 1999 and the second

24   Bravo Zulu Award was given on or about March 2008. On or about March 2009 Mr. Prado was presented the Job Offer

25   with Accommodation Contract. FedEx quickly and easily breached the terms and conditions of the contract. On or about

26   July 2009 Ms. McMaster told Mr. Prado: "Ruben Maynes (RHV Sr. Manager) is satisfied with your job performance."

27   While working at the SJC Station Mr. Prado was routinely assigned to do such non light duty tasks as:  down-

28   loading freight, belt split, recycling, pull freight from the belt and stack the freight in its designated truck, palletized

1

1   freight and organize the supplies.  On most occasions, Mr. Prado needed to use his left hand to assist him in these

2   non light duty tasks.  When organizing the supplies Mr. Prado would be required to use the pallet jack.  Mr. Prado used

3   only his right side to push/pull the pallet jack.  Mr. Prado pushed/pulled pallets of supplies having a maximum weight of

4   approximately 2,000 pounds or about 1,000 kilograms.

5       From what Mr. Prado experienced and witnessed:  The average work day for Part-Time Handlers was 2-3 hours;

6   although a Part-Time Handler's shift is for a 4 hour period.  The Handlers' hours depend on the volume freight coming

7   in and going out of the station.  Some Handlers, just as Mr. Prado routinely received prior to his first leave, are

8   regularly given "extra" hours.  Prior to his first leave of absence, Mr. Prado routinely worked 6 days a week.  Mr. Prado

9   was used as a "runner", sent to "work" at Cisco Systems and a driver's "helper".  Mr. Prado routinely worked 8-10 hour

10  shifts and continued to be classified as a Part-Time Handler.  As a Part-Time Handler it  was not mandatory to accept

11  these "additional" hours.  FedEx Management made the decision which Handler would be given  the opportunity to

12  make more money working extra hours.  Beginning on or about November 2001 FedEx Management no longer offered

13  Mr. Prado this financial opportunity.

14      Mr. Prado has a forklift certificate from another company.  Mr. Prado was not allowed to obtain a FedEx forklift

15  certificate - after his return from his first Medical Leave of Absence.  After Mr. Prado returned from his first Medical

16  Leave he continued to drive the forklift, without certification and incident, and FedEx Management allowed it.

17      On or about 2005 Paul Nadeau, FedEx Manager, banned Mr. Prado from using the forklift.  On or about July

18  2006 Mr. Nadeau suspended Mr. Prado for driving the forklift.  Mr. Prado explained how he was ordered to move the

19  supply freight by Delfin Hernandez, SJC Coordinator.  Mr. Prado explained he was only following management's orders.

20  Mr. Prado also reminded Mr. Nadeau how he had been requesting his forklift certification; but, FedEx Management

21  won't allow it.  Mr. Nadeau responded:  "The reason you don't get the forklift certification is because I don't want it."  On

22  or about July 2006 Mr. Prado reported this incident to Angela Suazo, SJC Sr. Manager.  This was not the first time Mr.

23  Prado reported Mr. Nadeau to FedEx Management.  On or about July or August of 2005 Mr. Prado reported Mr.

24  Nadeau for harassment because Mr. Nadeau was insisting that Mr. Prado pull a split shift; otherwise, he was going to

25  demote Mr. Prado and strip Mr. Prado of his benefits.  Mr. Prado informed Mr. Nadeau that there was another

26  employee with less seniority and the employee was not made to work AM and PM.  Mr. Nadeau responded:  "I don't

27  care!  I want you to work AM and PM!" As for the forklift certification, Mr. Prado was given a variety of inconsistent and

28  contradicting excuses.

1     FedEx Management would order Mr. Prado to work faster. Mr. Prado would remind management of his disability

2 and limitations. Mr. Prado repeatedly requested light duty. Mr. Prado was made to suffer, work in a hostile and unsafe

3 work environment and his health and safety were jeopardized. These incidents of adverse employment actions are

4 both substantial and detrimental. These individual incidents when taken together demonstrate FedEx's unlawful

5 employment practices:

6     At times Mr. Prado would be injured. His blood would drop or rub onto the parcels and packages. Because Mr.

7 Prado has limited feeling on his left side there would be times that Mr. Prado did not know he was injured; until, his

8 coworkers would be complaining to a FedEx Manager, such as Steve Evans,"there's blood on the boxes and packages."

9 Steve Evans and other FedEx Managers did not care. Mr. Prado was told: "Go get a band-aid and go back to work."

10     On or about July 2007 Steve Evans pushed Mr. Prado to work faster. Mr. Prado walked out of the container and

11 told Mr. Evans: "You're harassing me because you know I am disabled and the left side of my body doesn't work good."

12     On or about late November 2005 Mr. Prado was on his way to download boxes. FedEx Managers, Cathy Doyle

13 and Ryan Grace, were in the freight containers area. Ryan commented about Mr. Prado's disability to Cathy. Cathy

14 replied: "He is pretending to be disabled."

15     On or about March 27, 2007, Mr. Prado attended a Handlers' meeting at approximately 8:45AM. The FedEx

16 Managers present during the meeting are: Angela Suazo, Paul Nadeau and Ryan Grace. They confirmed what

17 Lavinsky and other coworkers had been telling Mr. Prado for a long time. During the meeting, Angela Suazo (SJC Sr.

18 Manager) stated: "We have been trying to fire him but it's been hard to get rid of him."

19     On or about October 2007 Mr. Prado reported to Craig Vanderberg, Sr. HR Rep., how he was being

20 systematically harassed by FedEx Management, how FedEx Management had created a hostile environment to try to

21 make Mr. Prado quit. Mr. Prado explained to Mr. Vanderberg that this situation started after he became disabled.

22 Approximately two weeks later Mr. Evans apologized; but other than that nothing changed.

23     Many times Delfin Hernandez, SJC Coordinator, would comment how Mr. Prado's "physical disabilities do not

24 exist." Mr. Hernandez would also have Mr. Prado walk back and forth in front of him and then comment: "I do not see

25 anything wrong with you." Then on or about April 2008 Mr. Hernandez told Mr. Prado: "I get mad when you explain

26 you're disabled. I don't see any disability. You are normal." Mr. Prado reported Mr. Hernandez to the FedEx Manager,

27 Olga DeHaro.

28     Mr. Hernandez's discrimination, harassment persisted. On or about April 2008 Mr. Hernandez asked Mr. Prado

3

1   about his legal status in the United States.  Mr. Prado explained that although he is "Hispanic", he is "not illegal."  On

2   another day on or about April 2008, Mr. Hernandez asked for Mr. Prado's California ID, Resident Card and Social

3   Security.  Mr Prado explained how he had his California ID; but not his Social Security Card.  Mr. Hernandez com-

4   plained to Mr. Prado that his California ID was expired.  Mr. Hernandez then asked for another form of valid picture ID.

5   Mr. Prado explained to Mr. Hernandez how he had only his "green card".  Mr. Hernandez instructed Mr. Prado to give

6   it to him.  Mr. Prado did as he was instructed by his superior.

7        On or about April 2008 the security guard at the SJC Station suggested to Mr. Prado that he bring in a doctor's

8   note.

9        On or about May 2008 Mr. Prado took in the doctor's note stating:  "Jose Prado has been under my care for HBP,

10  stroke with left side weakness.  Light work. No lifting, carrying."  Mr. Prado gave the doctor's note to his manager, Olga

11  DeHaro.  Ms. DeHaro made a copy of the note and return the original to Mr. Prado.  Ms. DeHaro informed Mr. Prado:

12  "It's good for only one day."

13       On or about May 2008 Mr. Prado faxed the accommodation form to Ms. McMaster.  Mr. Prado re-faxed the

14  accommodation form two more times.  Ms. McMaster called Mr. Prado to inform him she received "the same fax three

15  times."  Ms. McMaster also advised Mr. Prado to "look out for a job you can perform in the station and let me know."

16       On or about June 2008 Mr. Prado's physician faxed the Physical Capacities Form to Mr. Prado's employer.

17  Moreover, on or about June 2008 Mr. Prado contacted Ms. McMaster to request the scanning position.  Ms. McMaster

18  explained to Mr. Prado how she would call the SJC Managers and let them know about his "new accommodation job";

19  but, Mr. Prado continued to be assigned non light duty tasks.  Mr. Prado repeatedly contacted Ms. McMaster and re-

20  quested her help.  Ms. McMaster ignored Mr. Prado.

21       On or about October 2008 Lupe informed Mr. Prado that Ron (Abad) didn't tell her what Mr. Prado was suppose

22  to do that day, but she did not think he wanted Mr. Prado to do scanning.  Also, on or about October 2008 Mr. Prado

23  went to do recycles and the front counter supplies.  While doing this job, Olga DeHaro told Mr. Prado to replace

24  Gilbert Acosta and do scanning.  Mr. Prado was only allowed to do scanning for approximately 7 minutes then Ms.

25  DeHaro replaced Mr. Prado and sent him back to do recycles.

26       On or about November 2008 Mr. Prado was downloading freight.  Mr. Prado inquired about his job accommodation.

27  Ms. DeHaro claimed Mr. Prado never turned it in.  This was not true and Mr. Prado reminded Ms. DeHaro that she had

28  given him the choice to turn it in to Ms. McMaster or to her.  Mr. Prado informed Ms. DeHaro that he had faxed the

1   same form to Ms. McMaster three times.  Mr. Prado further explained to Ms. DeHaro how he had spoken to Ms.

2   McMaster over the phone and she had assured him that she would be talking to management to have Mr. Prado do

3   scanning.  Nothing came of this conversation with Ms. DeHaro.

4       On or about December 2008 Mr. Prado was injured.  Mr. Prado cut his left hand; while downloading boxes. Mr.

5   Prado showed his bleeding hand to Ruben Anaya, SJC Sr. Manager.  Mr. Anaya told Mr. Prado:  "Put a band-aid on it."

6   Later that day Mr. Prado was pulling supply boxes away with one of the carts.  Delfin Hernandez called Mr. Prado to

7   walk straight at him without any support.  Mr. Prado did as he was instructed.  Mr. Hernandez then told Mr. Prado:  "I

8   see you as perfect.  I don't see anything wrong with your walking.  You walk better than before."

9       On or about December 2008 Mr. Prado contacted Ms. McMaster and forwarded a copy of the doctor's note.  Mr.

10  Prado told her he was returned to the position to download freight from the cans.  This position was assigned to Mr.

11  Prado by the FedEx Manager, Ron Abad.  Mr. Prado reminded Ms. McMaster how this was not a light duty position

12  and it is not what Mr. Prado's physician recommended.  Mr. Prado also asked Ms. McMaster if this was another

13  attempt at a "constructive discharge."  Ms. McMaster ignored Mr. Prado.  Ms. McMaster as a FedEx HCMP Manager

14  knows what she is doing and the power she holds. Where Mr. Prado is concerned Ms. McMaster's disparate treatment

15  of Mr. Prado cannot be seen as anything other than intentional discrimination.  Afterall, "FedEx claims to take affirmative

16  action...in any position which does not jeopardize the health and safety of the disabled employee or other employees..."

17  Ms. McMaster has chosen to openly disregard both the law and company policy with respect to Mr. Prado.

18      On or about January 8, 2009, Mr. Prado filed his inital complaint with the EEOC.  EXHIBIT A

19      On or about January or February 2009 Mr. Prado and other FedEx employees were notified that the SJC Station

20  was going to be closed and they were going to be transferred to other stations.  Mr. Prado was transferred to the RHV

21  Station.

22      On or about March 2009 Ms. DeHaro presented to Mr. Prado the Job Offer with Accommodation.  Mr. Prado

23  signed it.

24      On or about March 23, 2009, Mr. Prado began working at the RHV Station.  Ruben Maynes, RHV Sr. Manager,

25  assigned Mr. Prado to do such non light duty tasks as: recycles and belt split. Mr. Prado was only allowed to do scanning

26  on 4 separate occasions and for only a short period of time.  This occurred on April 8, 9, 23 and 24.  But, Mr. Prado

27  was not provided with training for use of the ROADS GUN.  However, a coworker by the name of Lorna Hernandez

28  was allowed routinely to do scanning and she did inform Mr. Prado she was going for training on the use of the

1    ROADS GUN. Also, Ms Hernandez has less seniority than Mr. Prado.

2        Prior to being transferred to the RHV Station Mr. Prado never knew of the existence of the ROADS GUN. Also, Mr.

3    Prado was not informed how different stations may use different equipment and how the equipment may have a impact

4    upon Mr. Prado's disability and physical limitations. Ms. McMster as a FedEx HCMP Manager is aware of this. Ms

5    McMaster chose to withhold this information from Mr. Prado, did not engage Mr. Prado in the interactive process to learn

6    what he could do and she did not provide training for Mr. Prado. Ms. McMaster "set-up" Mr. Prado to fail for termination.

7        On or about May 2009 Mr. Prado notified Ms. McMaster how the Job Offer with Accommodation had already been

8    breached. Mr. Prado was made to work without reasonable accommodation. Ms. McMaster ignored Mr. Prado.

9        On or about June 18, 2009, Mr. Prado worked his scheduled shift; without a reasonable accommodation. Mr. Prado

10   was assigned to split the belt, sorted documents and did recycles. RHV Management is aware how some of the packages

11   exceeded Mr. Prado's lifting/push/pull restrictions of 20lbs. Mr. Prado was routinely assigned to do these tasks. All

12   during his shift he felt ill. But, Mr. Prado performed his assigned duties. Mr. Prado suffered his second stroke.

13       On or about July 17, 2009, Mr. Prado's doctor provided an estimate of when Mr. Prado would be released to

14   return to work. On or about October 16, 2009, was the estimated return to work date. Mr. Prado could have had the

15   CHCMC consider an extension to Mr. Prado's Medical Leave and still retain his same "accommodated position". This

16   provision of company policy was not afforded to Mr. Prado and Mr. Prado did not qualify for a leave under the FMLA.

17       Mr. Prado was released to return to work on October 15, 2009. Mr. Prado faxed Ms. McMaster the doctor's note.

18   Ms. McMaster was to fax Mr. Prado's doctor the Physical Capacities Form. But, Ms. McMaster claims to have "forgotten"

19   to do this prior to taking her own leave. Yet, FedEx allows the time to keep passing.

20       On or about October 26, 2009, Mr. Prado had not heard anything regarding his return to work. Mr. Prado contacted

21   Ms. McMaster and this is the first he learned Ms. McMaster was claiming to have forgotten to fax the form.

22       The form Ms. McMaster sent to Mr. Prado's doctor was to estimate Mr. Prado working an 8 hour day with two 15

23   minute breaks and one 30 minute to 1 hour meal break. But, Mr. Prado is only a part-time employee. There was no

24   need to lie and misrepresent this to Mr. Prado's doctor. This was not an innocent mistake. Ms. McMaster lied, misre-

25   presented the doctor's estimate on Mr. Prado's capabilities and twisted the doctor's diagnosis inside out to make Mr.

26   Prado appear to be more disabled than what he actually is. Ms. McMaster also made Mr. Prado's permanent

27   restrictions and limitations to be more severe. Ms. McMaster willfully, maliciously flipped/flopped the doctor's opinion

28   based on a "feeling" to a medical "determination" which is overly broad, absolute and permanent.

1    On or about January 19, 2010, Mr. Prado met with Craig Vanderberg at the SJCRT Station.  Mr. Vanderberg

2    was able to see for himself how Mr. Prado is the same.  Mr. Prado walks, talks and stands the same as before his

3    second stroke.  This is the first time Mr. Prado was informed that Ms. McMaster was claiming to have lost, misplaced

4    Mr. Prado's accommodation form he faxed Ms. McMaster on or about May 2008.  If this is true, Ms. McMaster had

5    many opportunities to contact Mr. Prado and request another form be sent.  Mr. Prado contacted Ms. McMaster on

6    numerous occasions to request her help and Ms. McMaster ignored him. The falsity of this explanation from Ms.

7    McMaster is simply the employer dissembling to cover-up a discriminatory purpose.

8    However, FedEx's deceit does not stop at Ms. McMaster because, during this meeting, Mr. Vanderberg

9    rationalized how the Job Offer with Accommodation does not prevent Mr. Prado from doing other tasks.  But, Mr. Prado

10   did make it clear that the contract does have a 20lb restriction.

11   On or about February 2010 Mr. Prado received a letter from Jennifer Ramos on behalf of the CHCMC.  This letter

12   informed Mr. Prado that his accommodation request was being denied.

13   On or about March 2010 Mr. Prado sent a letter to the CHCMC requesting a reconsideration.  Mr. Prado

14   went on a per sentence basis pointing out the lies, contradictions, misrepresentations and so on.  Mr. Prado also

15   wanted the CHCMC to distinguish the medical information from his first and second strokes.  The CHCMC cannot

16   validate the company's recent allegations regarding Mr. Prado's previous job performance, using the doctor's fax on

17   October 29, 2009, as an outline on his medical history.  The only response Mr. Prado received was his termination

18   letter dated April 19, 2010.

19   On or about May 20, 2010, Mr. Prado filed his second complaint with the EEOC.  EXHIBIT B

20   On or about 2009-2010 Mr. Prado was involved with a number of investigations.  Mr. Prado was not informed of

21   the results for all of the investigations. - only two.

22   On or about February 2010 and June 2010 Mr. Prado received two letters from Stephen Seymour, FedEx Managing

23   Director Bay District. These letters were in regards to Mr. Prado's discrimination and/or harassment.  Mr. Seymour

24   explains: "Our investigation did identify some practices that may be inconsistent with our policies, culture and philosphy."

25   From 2009-2010 Mr. Prado would diligently address FedEx's letters on a per sentence.  Mr. Prado would point out

26   the lies, misrepresentations, inconsistencies that FedEx Management was using to rationalize.  At one point, Ms.

27   McMaster referred to accommodations that Mr. Prado was never informed of until after he was terminated.

28

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Jose Prado**<br>**P.O. Box 914**<br>**San Jose, CA 95108** | From: **San Jose Local Office**<br>**96 North Third Street**<br>**Suite 250**<br>**San Jose, CA 95112** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **556-2010-00522** | **Rosa M. Salazar,**<br>**Investigator** | **(408) 291-4231** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

_____
**Dana C. Johnson,**
**Director**

4-26-12
*(Date Mailed)*

cc:   **Patricia Batts**
**FEDEX**
**3660 Hacks Cross Road**
**Building F, 3rd Floor**
**Memphis, TN 38125**

*EXHIBIT A*

UNITED STATES POSTAGE

$ 00.45⁰
PITNEY BOWES
APR 27 2012

02 1A
0004601960
MAILED FROM ZIP CODE 95112

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SAN JOSE LOCAL OFFICE
96 NORTH THIRD STREET, SUITE 200 *250*
SAN JOSE, CA 95112

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

Jose Prado
P.O. Box 914
San Jose, CA 95108

AN EQUAL OPPORTUNITY EMPLOYER

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Jose Prado
P.O. Box 914
San Jose, CA 95108

From: San Jose Local Office
96 North Third Street
Suite 250
San Jose, CA 95112

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 556-2010-00522 | Rosa M. Salazar, Investigator | (408) 291-4231 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Dana C. Johnson,
Director

4-26-12
(Date Mailed)

Enclosures(s)

cc: Patricia Batts
FEDEX
3660 Hacks Cross Road
Building F, 3rd Floor
Memphis, TN 38125

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SAN JOSE LOCAL OFFICE
96 NORTH THIRD STREET, SUITE 200 *250*
SAN JOSE, CA 95112

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

UNITED STATES POSTAGE
PITNEY BOWES
02 1A
0004601950      $ 00.45
APR 27 2012
MAILED FROM ZIP CODE 95112

Jose Prado
P.O. Box 914
San Jose, CA 95108

AN EQUAL OPPORTUNITY EMPLOYER

EXHIBIT B