UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSE A. PRADO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>　　　　　Defendant. | Case No. 5:12-cv-03945-PSG<br><br>**ORDER DENYING MOTION FOR NEW TRIAL**<br><br>**(Re: Docket No. 221)** |

Following a jury verdict in favor of Defendant Federal Express Corporation, Plaintiff Jose Prado seeks a new trial based on purported inconsistencies in the verdict form, errors of law as to jury instructions and jury findings that are against the weight of the evidence. Because the court can find no material error or inconsistency that warrants granting Prado a new trial, the motion is DENIED.

**I.**

Pursuant to Federal Rule of Civil Procedure 59(a), "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[1] "The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon

---

[1] Fed. R. Civ. P. 59(a)(1).

false or perjurious evidence, or to prevent a miscarriage of justice."[2]  In determining whether the verdict form was properly presented to the jury, it must be considered in conjunction with the associated jury instructions.[3]

Prado was an employee of FedEx from December 17, 1997 until his termination on April 14, 2010.  His termination followed a series of medical issues associated with a stroke in 2001 and another in 2009.  After his first stroke, Prado returned to work after a number of months and performed a wide range of tasks from copying to operating machinery.  After his second stroke, Prado returned to work with medical restrictions that severely limited the type of work he could do.  Soon after, Prado was terminated for an inability to find work that fit within his medical limitation.

Prado filed two complaints with the EEOC: the first was during his employment on January 13, 2009, and the second was just after his termination on May 20, 2010.  He then brought this suit a little more than two years later.

After the court granted FedEx's motion for summary judgment only in part,[4] a nine-person jury heard the case over two weeks in September 2014.  The jury found that FedEx was not liable for any of Prado's seven claims: (1) failure to provide reasonable accommodation in violation of the Americans with Disabilities Act; (2) disability discrimination in violation of the ADA; (3) failure to provide reasonable accommodation in violation of the California Fair Employment & Housing Act; (4) failure to engage in the interactive process in violation of FEHA; (5) disability discrimination in violation of FEHA; (6) failure to prevent discrimination in violation of FEHA; and (7) discrimination in violation of public policy.

Prado now moves for new trial, arguing that: portions of the jury's verdict are against clear weight of the evidence,  portions of the verdict are inconsistent, there were errors of law during the trial and there was witness misconduct.

---

[2] *Passantino v. John & Johnson*, 212 F.3d 493, 510, n.15 (9th Cir. 2000).

[3] *See Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1991).

[4] *See* Docket No. 132.

2
Case No. 5:12-cv-003945-PSG
ORDER DENYING MOTION FOR NEW TRIAL

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331. This court has supplemental jurisdiction over the pendant state law claims under 28 U.S.C. § 1367. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

Prado's various challenges raise ten separate grounds for a new trial. None is persuasive.

***First*** at issue is whether the jury's verdict properly addresses the undisputed fact that, before his second stroke, Prado was able to perform the essential functions of part-time handler without accommodation. The parties concur that Prado was capable of and had no difficulty performing these duties until he was relieved of some of his more arduous tasks in March 2009. Prado takes issue with the fact that the verdict form does not delineate between the first and second stroke. But the jury was not presented with facts suggesting that his capabilities were disputed before the second stroke; as such it is reasonable to assume that the jury decided that Prado was unable to perform the essential functions with or without accommodation after his second stroke only.

FedEx bolsters this conclusion by pointing out that the jury's determination here is consistent with its findings in other portions of the verdict form. Specifically, the jury found that FedEx indeed "fail[ed] to cooperate in a timely, good-faith interactive process" but that the failure was not "a substantial factor in causing harm to Mr. Prado." This shows that it determined Prado was unable to perform the essential functions with or without accommodation after his second stroke and that he did not need an accommodation before his second stroke.

It is the jury's duty to weigh the evidence and reach a fair decision.[5] Here, Prado has failed to present any indication that the jury's finding was improper or against the clear weight of the evidence.

---

[5] *See United States v. Clark*, 86 F.3d 1164, *2 ("The jury's function is to ascertain the truth after weighing the credibility of . . . witnesses.") (citing *Berry v. United States*, 312 U.S. 450, 453 (1941) ("juries have "the exclusive power . . . to weigh evidence and determine contested issues of fact—a just being the constitutional tribunal provided for trying facts in courts of law.")).

***Second,*** Prado argues that the jury's finding of "no adverse employment action" could only be a result of legal error by the court. Specifically, he takes issue with the court's decision to omit a list of adverse employment actions from Jury Instruction No. 7.[6] While Prado argues that the itemized list is required under the Ninth Circuit model jury instructions, the instructions actually require no such thing. Rather, the model jury instructions give a few standard options—such as "discharge," "not hire," "not promote" and "demote"— as well as the ability to "state other adverse action."[7] But there is no indication that an exhaustive list is required. The instruction as proposed by Prado reached far beyond what is recommended by the model instructions and belabored the points in an otherwise straightforward jury instruction crafted to avoid juror confusion. But that aside, the court included a further instruction on adverse employment actions that encompassed the notion that adverse employment action is more than just termination.[8]

Even if the court had accepted Prado's proposed instruction, in light of its finding as to liability earlier in the form, a finding that FedEx had taken an adverse employment action against Prado would not have changed the ultimate posture of the verdict. A redo based on this instruction alone would not yield new results.

***Third,*** Prado claims that the jury's finding that FedEx did not deny Prado reasonable accommodation is against the clear weight of the evidence. As was noted above, there is no dispute that Prado was able to and did perform the essential functions of his position without accommodation until just before his second stroke. Prado bases his argument on the fact that he had asked for an accommodation years earlier and could have performed the required duties had an accommodation been granted. While it may be true that Prado could have performed the duties with an accommodation, there is a factual dispute about when he requested or whether he needed

---

[6] *See* Docket No. 209 at 8.

[7] 12.1A ADA Employment Actions—Where Evidence Supports "Sole Reason" or "Motivating Factor," Ninth Circuit Manual of Model Civil Jury Instructions.

[8] *See* Docket No. 209 at 10 ("Adverse employment actions are not limited to ultimate actions such as termination or demotion. . . . An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion.").

4
Case No. 5:12-cv-003945-PSG
ORDER DENYING MOTION FOR NEW TRIAL

accommodation before his second stroke. And it was for the jury to decide. This court is not in a position to overrule a verdict on the very type of factual dispute that juries serve to decide.

***Fourth,*** Prado argues that the jury could not have found that FedEx failed to engage in a timely, good faith interactive process without also finding that this failure was a substantial factor in causing Prado's harm. But the verdict form indicated otherwise; the jury appears to have coherently parsed through the evidence and come to substantiated conclusions. For example, Prado argues that no evidence was introduced to contradict Prado's own description of his emotional distress and the testimony of Dr. Adelberg, yet FedEx points out that the jury was instructed that it need not accept the testimony of expert witnesses and possibly did not due to the doctor's personal stake in the case. It is reasonable to conclude that the jury may have viewed Prado's own testimony regarding personal damages as unsubstantiated. The jury's job is to weigh witness credibility, and as far as the court is concerned, the jury properly weighed the evidence presented. That Prado does not agree is not itself indicative of error.

***Fifth,*** Prado argues that the jury's answers are irreconcilably inconsistent and the verdict thus should be void. The court has the obligation to reconcile apparent inconsistencies before granting a new trial.[9] For a jury's answers to be irreconcilably inconsistent they "must be logically incompatible, thereby indicating that the jury was confused or abused its power."[10] Prado argues that the jury's answers are irreconcilably inconsistent because it found that FedEx failed to engage in a timely, good faith interactive process while also finding that Prado suffered no adverse employment action.

While it may be true that an adverse employment action can include a failure to "engage in the interactive process,"[11] FedEx aptly points out that the jury might have concluded that the failure to engage in the interactive process did not cause Prado harm and hence was not an adverse

---

[9] *See Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963); *Bains LLC v. ARCO Products Co., Div. of Atlantic Richfield Co.*, 405 F.3d 764, 771 (9th Cir. 2005).

[10] *Johnson v. ABLT Trucking Co., Inc.*, 412 F.3d 1138, 1144 (10th Cir. 2005) (internal quotes omitted).

[11] *See Williams v. Phil. Hous. Auth. Police Dep't,* 380 F.3d 751, 761 (3d Cir. 2004).

5
Case No. 5:12-cv-003945-PSG
ORDER DENYING MOTION FOR NEW TRIAL

employment action. And Prado correctly counters that the finding of harm is different from adverse employment action. But the jury's verdict points to the fact that the timely engagement of the interactive process between the parties would not have "materially or adversely affected the terms, conditions, or privileges of Mr. Prado's employment" because he lacked the need for an accommodation prior to the second stroke—until he received one—and there was not a reasonable accommodation for Prado after the second stroke.[12]

The jury's verdict is certainly not irreconcilably inconsistent—or inconsistent at all—but instead demonstrates consistency with its prior finding that Prado was not able to perform the essential duties of the handler position with or without accommodation. The court simply cannot say that the jury erred.

***Sixth,*** Prado argues that it was error for the court to omit jury instructions on hostile work environment. Prado bases his objection on the premise that harassment is actionable when it creates a hostile work environment and can be shown when conduct is constituted or accompanied by adverse employment actions, such as conduct that is "sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment."[13] But Prado also concedes that the allegations of harassment and hostile work environment were incorporated into the disability discrimination claims under the ADA and FEHA and into the discrimination in violation of public policy claim—the second, sixth and ninth causes of action, respectively. There was no operative cause of action for harassment or hostile work environment and so specific instructions as to these allegations were not admitted. On top of this, the instruction regarding adverse employment actions adequately addressed these issues.[14]

---

[12] *See* Docket No. 209 at 10 ("9. ADA: 'Adverse Employment Action' Explained").

[13] *Kelly-Zurian v. Wohl Shoe Co., Inc.*, 22 Cal. App. 4th 397, 409 (1994).

[14] *See* Docket No. 209 at 10:

> 9. ADA: "Adverse Employment Action" Explained
>
> Adverse employment actions are not limited to ultimate actions such as termination or demotion. There is an adverse employment action if FedEx has taken an action or engaged in a course of pattern of conduct that, taken as a whole, materially and adversely affected the terms, conditions, or privileges of Mr. Prado's employment.

As FedEx notes, the court relieved Prado of the duty of establishing that the alleged harassment was "severe or pervasive" which is a higher standard than that required for discrimination. Because the jury found no adverse employment action and no discrimination, there is no reason to believe that it would have separately found hostile work environment liability, due to this higher standard. As such, any conceivable error on the jury's part is harmless.[15]

***Seventh,*** Prado makes a blanket argument that the verdict form is flawed as a matter of law. While Prado rightly points out that the verdict form mistakenly points the jury to question 11 instead of question 7 after answering questions 1-4, the error is ultimately inconsequential. The jury answered identical questions in Part B and answered all in the affirmative. If we are to assume the jury would have answered questions 7-10 differently, then we are to assume that FedEx would have been cleared of liability prior to answering question 11. And if Prado wants to argue the jury's answers to questions 7-10 would have been materially different than those in Part B, we would be looking at an inconsistent jury verdict—which would only give FedEx fodder for a motion for new trial.

Prado also argues that the verdict form erroneously omitted the definition of essential functions as being able to perform "one or more" of the functions of the job. The court chose to follow the ADA and FEHA guidelines in allowing the jury to determine if Prado could—put more simply—"perform the essential functions" of his job.[16] Prado offers no authority for why this court should have chosen Prado's iteration over FedEx's—instead choosing to speculate that the court's instructions confused the jury. This court cannot grant a new trial based on mere speculation.

***Eighth,*** Prado contends that the jury finding that FedEx did not discharge or displace Prado without pay is contrary to the evidence. He argues that the only possible explanation is that the

---

> An adverse employment action includes conduct that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion. However, minor or trivial actions or conduct that is not reasonably likely to do more than anger or upset an employee cannot constitute an adverse employment action.

[15] *See Cobb v. Pozzi*, 363 F.3d 89, 112 (2d Cir. 2004).

[16] Docket No. 215 at 2.

7
Case No. 5:12-cv-003945-PSG
ORDER DENYING MOTION FOR NEW TRIAL

jury improperly considered disability payments—about which Prado had requested a cautionary instruction. The instructions clearly state that "it is a violation of public policy to discharge or displace without pay someone from employment because he is a qualified individual with a disability."[17] The instructions also define "qualified individual" as an individual "who, with or without a reasonable accommodation, can perform the essential functions" of the handler position. Since the jury determined that Prado was not a qualified individual earlier in the verdict form, it can be reasonably assumed that the jury worked through the instructions as presented. Prado's suggestion that the jury considered disability payments is pure speculation.

*Ninth* at issue is whether the jury improperly found that Prado was unable to perform the essential functions of handler with or without accommodation as a result of improper instructions regarding the essential functions. Prado objects to FedEx's reliance on a medical evaluation to determine whether Prado could perform the essential functions, but Prado points to no authority allowing an erroneous instruction argument on this basis alone.

That aside, the instruction stated that the "employer is entitled to rely on medical opinions provided by the employee's doctor regarding the employee's medical condition, abilities and limitations."[18] Whether or not the doctor provided specific information about what tasks Prado could or could not perform, it is reasonable for a jury to infer Prado's ability to perform specific tasks based on the doctor's assessment of Prado's physical abilities and limitations more generally. Finally, regardless of the instructions that Prado sought, the jury was ultimately instructed according to the Ninth Circuit and CACI Model Jury Instructions. Prado can point to nothing that makes the instructions improper.

*Tenth,* Prado takes issue with the court's refusal to compel witness Stephen Seymour to testify in the rebuttal portion of his case at trial. Prado argues that Seymour would have testified to evidence critical to his case. But the jury received testimony from Craig VandeBerg that he—and not Seymour—in fact conducted the investigation, prepared the report and made the findings

---

[17] Docket No. 209 at 39.

[18] *Id*. at 34.

therein. Plus, Seymour was identified on Prado's witness list to offer testimony about the same topics as Ramona McMaster and VandeBerg—individuals who testified at length at trial. Any further testimony by Seymour would have been cumulative at best.[19] On top of this, the investigative report—whether prepared by VandeBerg or Seymour—was admitted into evidence giving the jury the opportunity to properly consider its contents.[20] The court is confident there was sufficient evidence for the jury to make a reasoned and well-founded verdict.

V.

Prado's motion for new trial is DENIED.

**SO ORDERED.**

Dated: January 28, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[19] Docket No. 126 at 10. Seymour, McMaster and VandeBerg were all identified to testify as to the following topics: "[Witness Name] will offer testimony related to the following: facts related to Mr. Prado's work performance; Defendant's attempts to accommodate Mr. Prado's disability; Defendant's failure to accommodate Mr. Prado disability; facts related to discrimination on the part of Defendant's employees and/or managing agents; Defendant's failure to engage in the interactive process; facts related to Defendant's failure to prevent discrimination; and facts related to Mr. Prado's termination."

[20] Docket No. 196 at 1488 (admitting Exhibit 149 into evidence).

Case No. 5:12-cv-003945-PSG
ORDER DENYING MOTION FOR NEW TRIAL